UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff-Appellee,<br><br>v.<br><br>RANOLFO RIOS-DIAZ,<br><br>         Defendant-Appellant. | Case No.: 19-MJ-23711-BGS-DMS<br><br>**ORDER AFFIRMING JUDGMENT OF CONVICTION** |

On December 17, 2019, Defendant-Appellant Ranolfo Rios-Diaz ("Defendant" or "Rios-Diaz") filed a timely notice of appeal to the district court. (ECF No. 27.) *See* Fed. R. App. P. 58(g)(2)(b). The Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3402. For the reasons discussed below, the judgment of conviction is affirmed.

**I.**

**BACKGROUND**

On September 6, 2019, Plaintiff-Appellee United States of America filed an information charging Defendant Rios-Diaz with attempted illegal entry in violation of 8 U.S.C. § 1325(a)(1), a misdemeanor. (ECF No. 1.) Defendant's case proceeded under the "Streamline" process, which the Department of Justice ("DOJ") used at that time to bring misdemeanor illegal entry charges under § 1325. *See United States v. Chavez-Diaz*, No.

1

18MJ20089 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018) (describing DOJ's "Operation Streamline"), *rev'd on other grounds*, 949 F.3d 1202 (9th Cir. Feb. 5, 2020).

At a status hearing on September 24, 2019, Defendant's counsel, Chloe Dillon, agreed to a trial date of December 10, 2019, and requested that the magistrate judge set a deadline for discovery regarding alleged officer misconduct. . (*See* ECF Nos. 14, 34.) The court ordered the Government to produce such materials no later than two weeks before trial. (*Id.* at 5.) On November 1, 2019, the Government filed a sealed *ex parte* application for an order directing either disclosure or nondisclosure of certain information regarding alleged officer misconduct. The magistrate judge ordered partial disclosure, and left the remainder of the application under seal. (ECF No. 17.) The disclosed information related to the arresting agents' membership in Facebook groups for Border Patrol agents that had received media attention for publishing offensive posts. (ECF No. 18-1 at 4–5.)

Defendant filed several pre-trial motions on November 26, 2019. (*See* ECF No. 18.) The motions relevant to this appeal are as follows: *first*, Rios-Diaz moved to preserve evidence and compel discovery—specifically regarding information as to whether "any agent involved in this case was ever a member of the 'I'm 10-15' Facebook group or of another social media group publishing white supremacist or bigoted posts." (ECF No. 18-1, at 2–5.) *Second*, Rios-Diaz filed a motion to dismiss on the grounds that (1) the Government failed to allege all the elements of the charged offense; (2) § 1325 violates equal protection and the nondelegation doctrine; and (3) his prosecution violated equal protection. (*See id.* at 9–31.) *Third*, Rios-Diaz moved to suppress his in-custody statements as involuntary and taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (*See id.* at 31–35.) The court denied the motion to dismiss and found the other motions moot. (*See* ECF No. 26; ECF No. 39, at 5–8.)

On December 2, 2019, Elizabeth Barros filed a notice of attorney appearance informing the court that she would be replacing Ms. Dillon as counsel for Defendant. (ECF No. 20.) Shortly thereafter, on December 9, 2019, the day before trial, Ms. Barros filed a motion to continue Defendant's trial due to unforeseen child-care issues. (ECF No. 23.)

The motion indicated that Ms. Dillon had three back-to-back trials scheduled for the week of Defendant's trial, and rather than seek a continuance, the case was transferred to Barros. (*Id.*) The Government opposed the motion to continue the trial. (ECF No. 24.) Ms. Barros argued the motion on the day of trial, December 10, 2020. She noted the case had been recently transferred to her because of Ms. Dillon's caseload, and that unforeseen child-care and staffing issues had arisen. (*Id.* at 4.) The magistrate judge denied the motion, stating there were "too many trials set up" and the court's "calendar [did] not permit continuances." (*Id.* at 3–4.) The court also denied all other motions on the merits. (*Id.* at 5–8.)

The matter was tried to the court and took approximately two hours. The Government called three witnesses: Border Patrol Agent Brandon Brandt, Border Patrol Agent Armando Hernandez, and Border Patrol Interpreter Lourdes Leon. On direct examination, Agent Brandt testified that he serves as a part of the patrol group assigned to the all-terrain vehicle unit at the Imperial Beach Border Patrol station. (*Id.* at 9–10.) He testified that while on duty at around 10:45 p.m. on September 5, 2019, he responded to the activation of a seismic intrusion device—a ground sensor that detects human footsteps and which is typically placed in areas known for high "traffic patterns in illegal alien activity." (*Id.* at 10–11.) He testified that upon arriving, he used his infrared monocular to locate two people walking in the dark. (*Id.* at 11–13.) After spotting the individuals, he inadvertently turned on his ATV headlights, at which point the individuals ran. (*Id.* at 13.) He chased the two people on foot and shortly thereafter found them hiding in the brush; they were approximately four miles from the San Ysidro port of entry and a quarter mile from the United States-Mexico border. (*Id.* at 13–14.) He identified Defendant at trial as one of the men he found in the brush. (*Id.* at 16.) He further testified that upon approaching the two men, he identified himself in Spanish as a border patrol agent, and asked both men about their citizenship. Both men stated they were Mexican nationals and lacked documentation permitting them to be in the United States. (*Id.* at 16–17.)

On cross-examination, Agent Brandt testified that he was previously a member of the "I am 10-15" and "10-15 Times Two" Facebook groups. (*Id.* at 21–22.) Defense counsel asked the agent if he was aware of posts joking about migrant deaths; he responded that he was not aware of such posts. (*Id.* at 23.) Agent Brandt further testified that he was only aware of inappropriate posts in these groups through the media, and did not recall personally seeing anything he thought was inappropriate or vulgar, or anything he believed he needed to report. (*Id.* at 25.) After government counsel objected on relevance grounds, the magistrate judge instructed defense counsel to move on to another topic. The court was satisfied that Agent Brandt had not seen anything inappropriate or vulgar posted to the groups, and any potential bias on the part of the witness had been adequately explored. (*Id.* at 25–26.)

Next, Agent Hernandez testified that he serves as part of the processing unit at the Imperial Beach station. (*Id.* at 33.) He stated that he interviewed Defendant in the early hours of the morning on September 6, 2019, and he identified Defendant in the courtroom as the individual he interviewed. (*Id.* at 34; *see also* ECF No. 41-1, at 3.) He testified that Defendant's interview was conducted by two uniformed Border Patrol agents at the Imperial Beach station. (ECF No. 39, at 24–25; ECF No. 41-1, at 3.)

Agent Hernandez started the interview by advising Rios-Diaz of his consular rights. (ECF No. 39, at 40; ECF No. 41-1, at 3–45.) Defendant indicated that he understood those rights and declined to contact a Mexican consular officer. (ECF No. 39 at 40–41; ECF No. 41-1 at 4.) Agent Hernandez then advised Defendant of his *Miranda* rights, including the right to counsel and the right to remain silent. (ECF No. 39, at 41; ECF No. 41-1, at 4–5.) He informed Defendant that if he decided to answer questions without a lawyer, he would "be still be able to stop answering questions whenever [he] want[ed]." (ECF No. 41-1, at 5.) Defendant said he understood those rights and confirmed this understanding in writing. (ECF No. 39, at 41–42; ECF No. 41-1, at 5.) Defendant also waived his right to an attorney both verbally and in writing. (ECF No. 39, at 42; ECF No. 41-1, at 5–6.) Immediately thereafter, Agent Hernandez identified himself as "an officer of the United States

Immigration and Naturalization Service [who is] authorized to take statements under oath and to administer the immigration laws." (ECF No. 41-1, at 6.) He advised Defendant about his administrative rights pertaining to immigration proceedings. (*Id.* at 6–8.) Defendant said he understood his rights and was willing to talk. (*Id.* at 8.)

Defendant admitted that he was a citizen of Mexico and entered the country without authorization. (*Id.* at 9–10; ECF No. 39, at 43.) He admitted entering the country that same day through Tijuana. (*Id.*) Agent Hernandez asked Defendant, "Then you never went to the port of entry to try to cross there at the port of entry?" to which he answered "No." (ECF No. 41-1, at 12; ECF No. 39, at 44.) Defendant further admitted to being arrested four times for entering the United States illegally. (ECF No. 41-1, at 12; ECF No. 39, at 43.)

In closing, defense counsel argued that the Government had not proved that Defendant entered the United States at a place other than a designated port of entry. (ECF No. 39, at 64–65.) The court found Defendant guilty, and cited Defendant's field and post arrest statements. (*Id.* at 66–69.) In addition, based on the location and circumstances of Defendant's apprehension, the magistrate judge determined that "it's irrational to believe that" Defendant came into the United States "though a port of entry, was examined, and then decided for some unknown reason to hike out in [a] remote area at 10:30/11:00 at night." (*Id.* at 67.) The court then sentenced Defendant to one year of probation. (*Id.* at 74.)

## II.
## DISCUSSION

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. "A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B). The appeal's scope is "the same as in an appeal

to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

On appeal, Rios-Diaz raises eight challenges to his conviction. *First*, Rios-Diaz argues he was improperly denied a continuance of trial. *Second*, Rios-Diaz argues his in-custody statements should have been suppressed. *Third*, Rios-Diaz argues the magistrate judge erred in sealing materials concerning the impeachment of two Government witnesses. *Fourth*, Rios-Diaz argues that he was denied confrontation rights at trial as to those Government witness. *Fifth*, Rios-Diaz argues the charging document failed to allege knowledge of alienage. *Sixth*, Rios-Diaz argues § 1325(a)(1) is unconstitutional because it violates the nondelegation doctrine. *Seventh*, Rios-Diaz argues his prosecution in the Southern District of California's "Streamline Court" violates the equal protection clause to the United States Constitution. *Finally*, Rios-Diaz argues § 1325 violates the equal protection clause. Each argument is addressed in turn.

### A. Denial of Continuance

Defendant argues the magistrate judge abused his discretion by denying continuance of his trial. The Government contends that the magistrate judge's denial was not arbitrary or unreasonable, and thus should not be disturbed.

District courts have broad discretion in deciding whether to grant or deny a continuance. *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985) (citations omitted). Such decisions are not to be disturbed on appeal absent a clear abuse of discretion. *Id.* In this context, a clear abuse of discretion occurs where the denial was arbitrary or unreasonable. *Id.* "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *United States v. Kloehn*, 620 F.3d 1122 (9th Cir. 2010) (quoting *Ungar v. Sarafite*, 376 U.S. 575 (1964)). However, courts are guided by four factors in making that determination: (1) the movant's diligence in preparing for trial, (2) whether a continuance would have achieved the movant's purpose, (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party, and (4) any prejudice the movant suffered as a result of the

denial. *Flynt*, 756 F.2d at 1358–59. Finally, a movant "must show at a minimum that he has suffered prejudice" to demonstrate abuse of discretion. *Id.* at 1359.

These factors weigh against a finding of abuse of discretion. First, the record reveals that Ms. Barros was diligent in preparing for trial and had sufficient time to prepare, as discussed below. Second, although a continuance would have provided counsel additional time to prepare, this factor alone does not render the magistrate judge's denial of continuance an abuse of discretion. Third, in denying Defendant's motion, the magistrate judge noted the congestion of the court's calendar. The inconvenience to the court, and the need to efficiently administer justice, weigh against a finding of arbitrariness.

Finally, and most importantly, the record does not support a finding of prejudice to Defendant. There is no indication that counsel's level of preparation prejudiced Defendant. The Government identifies numerous points in the trial where defense counsel's familiarity with the facts and law was evident. (ECF No. 42, at 11.) Indeed, both parties acknowledge that Defendant was well served through counsel's performance. (*Id.*; ECF No. 43, at 5.)

Notably, Defendant does not claim his counsel's level of preparation prejudiced him at trial; rather, he argues that counsel's lack of preparation detrimentally impacted the presentation of his pretrial motions and equities at sentencing. Defendant argues that Ms. Barros "appeared unfamiliar with his pretrial motions." (ECF No. 41, at 14.) The Court disagrees. The sole example of prejudice Defendant offers is that Ms. Barros "did not make any record objections as to the magistrate judge's denial" of the motions. (*Id.*) It is unclear how further preparation would have affected whether defense counsel elected to make objections. An unprepared attorney can enter objections. Further, the lack of objections did not affect the disposition of the case. The Court therefore finds no prejudice as to Defendant's pretrial motions.

At sentencing, the magistrate judge based the sentence on his "concern" that Defendant "is going to come back" into the United States illegally. (ECF No. 39, at 74.) Defendant argues that more preparation would have allowed his counsel to either clarify the number of Defendant's voluntary returns to Mexico or explain why the returns were

not reflective of an intent to enter the country illegally in the future. The record belies Defendant's arguments. Ms. Barros was adequately prepared. She displayed familiarity with Defendant's criminal record, immigration history, and family background; and she argued capably on his behalf concerning those facts. Defendant was not prejudiced by his counsel's performance at any stage of the proceedings. The magistrate judge did not abuse his discretion in denying a continuance of the trial.

## B. Suppression of Statements

Defendant argues that Agent Hernandez gave him inadequate advisals under *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), and that the magistrate judge erred in declining to suppress his post arrest statements. The Court need not reach the merits of this issue because, even if the Court were to exclude Defendant's post arrest statements, the remaining evidence was sufficient to convict beyond a reasonable doubt. Thus, any error was harmless. *See United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) ("The admission of statements made in violation of a person's *Miranda* rights is reviewed for harmless error."); *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding involuntary confessions are subject to harmless error).

Generally, a party's failure to raise the issue of harmless error constitutes waiver of the issue. *United States v. Murguia-Rodriguez*, 815 F.3d 566, 572–73 (9th Cir. 2016). However, courts also have the discretion to consider harmlessness *sua sponte* in certain cases. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100–01 (9th Cir. 2005). Three factors guide courts in determining whether to exercise this discretion: (1) length and complexity of the record, (2) whether the harmlessness of the error is certain or debatable, and (3) the futility and costliness of further litigation. *Id.* Here, the record is short and simple—the trial took less than two hours and the trial transcript is only 76 pages. (*See* ECF No. 39.) As discussed below, the harmlessness of the alleged error is reasonably certain. Further, retrial of Defendant's case would be futile because of the strength of the other evidence.

An admission of statements made in violation of a person's *Miranda* rights is reviewed for harmless error. *United States v. Polanco*, 93 F.3d 555, 562 (9th Cir.1996). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). Here, even if the Court were to credit Defendant's argument that his post arrest statements should be suppressed, the Court finds beyond a reasonable doubt that he would have been convicted on the remaining evidence. Agent Brandt's testimony was sufficient to secure a conviction. Defendant was apprehended in a remote area approximately a quarter mile from the United States-Mexico border and four miles from a designated port of entry after triggering a seismic sensor in an area known to be heavily trafficked by aliens entering the country illegally. The sensor was triggered at around 10:45 p.m. When the agent approached, Defendant fled and hid in the brush. Upon apprehension, Defendant stated he was a Mexican citizen and lacked documentation. This evidence is uncontested and satisfies beyond a reasonable doubt the elements of the crime. Accordingly, even if Defendant's post arrest statements were erroneously admitted, the error would be harmless.

**C. Sealed Materials**

Defendant argues that the magistrate judge erred in sealing certain information regarding government witnesses.[1] "A district court may seal its records pursuant to its inherent supervisory power over such documents." *Brennan v. Opus Bank*, 796 F.3d 1125, 1134 (9th Cir. 2015) (citations omitted). In sealing records, a court must articulate the basis for its ruling." *See Kamaka v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir.

---

[1] Defendant also argues that the magistrate judge erred by failing to order that the Government produce documentation about Government witnesses' social media use, "such as screenshots of posts, comments, and likes," or information about their social media activity. (ECF No. 41 at 21.) However, Defendant never requested these documents. (See ECF No. 18-1.) Rather, he requested disclosure of "all information in the government's possession that any agent involved in this case was ever a member of the 'I'm 10-15' Facebook group or of another social media group publishing white supremacist or bigoted posts." (*Id.* at 4.) Defendant cites no authority for the proposition that the magistrate judge had an obligation to order production of these materials *sua sponte*. Accordingly, the Court finds no error.

2006). A court's decision to seal records is ordinarily reviewed under an abuse of discretion standard. *See Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). However, in criminal cases where an argument is raised for the first time on appeal, reviewing courts apply plain error review. *United States v. Yijun Zhou*, 838 F.3d 1007, 1010 (9th Cir. 2016). The Government urges the Court to employ this standard because Defendant did not object to the magistrate judge's order directing disclosure of portions of the Government's *ex parte* application. (ECF No. 42, at 17–18.) Defendant argues that doing so "would be absurd" because he "could not object to an undocketed Government filing he could not see." (ECF No. 43 at 9.) But while Defendant could not see the sealed application, he could see the order that sealed portions of the application. (*See* ECF No. 17.) His failure to object to that order prior to this appeal results in plain error review.

"Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights," but a reviewing court may notice such an error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Yijun Zhou*, 838 F.3d at 1012 (quoting *United States v. Myers*, 804 F.3d 1246, 1257 (9th Cir. 2015)). The Court has independently reviewed the sealed record to determine whether any error seriously affected the fairness of the judicial proceedings. Assuming without deciding that the application should have been disclosed, the Court finds that the sealed portions of the application contain no information that is material to either guilt or punishment, relevant to credibility of government witnesses, or otherwise would have affected the fairness of the proceedings. The Court further finds that because the magistrate judge ordered the disclosure of all of the information in the application pertaining to witness credibility, the sealing of other portions of the record did not undermine the integrity of the proceedings.

**D. Confrontation of Trial Witness**

Defendant argues the magistrate judge abused his discretion and violated his 6th Amendment rights when he precluded defense counsel from fully exploring bias on the part of Agent Brandt. The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right to cross examine witnesses testifying against them. *Douglas v.*

*Alabama*, 380 U.S. 415, 418 (1965).  As such, appeals alleging a trial court excluded cross-examination on an entire area of inquiry are reviewed *de novo*. *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir 2007) (en banc).  However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Therefore, a trial court's restrictions on the mere manner or scope of cross-examination are reviewed for abuse of discretion. *Id.*

Defendant does not claim that he was prevented from cross-examining the witnesses regarding potential bias; rather, he claims that the magistrate judge inappropriately limited cross-examination on the topic.  Accordingly, the Court reviews Defendant's claim for abuse of discretion.

Here, the magistrate judge allowed defense counsel to ask Agent Brandt 19 questions about his membership in two controversial Facebook groups and related social media use. (ECF No. 39, at 19–26.)  After objection by government counsel, the magistrate judge instructed defense counsel to cease questioning on the topic because "the foundation hasn't been established that [Agent Brandt] saw anything inappropriate which is vague and ambiguous."  (*Id.* at 25.)  The magistrate judge further explained that Agent Brandt "testified that he didn't see anything vulgar or anything that the media reported, and I'm satisfied that that really answers the inquiry that's relevant to an area of bias." (*Id.* at 25–26.)

"Generally, once cross-examination reveals sufficient information with which to appraise a witness's possible bias and motives, confrontation demands are satisfied." *United States v. Bonanno*, 852 F.2d 434, 439 (9th Cir. 1988).  Here, the magistrate judge, sitting as the trier of fact, determined that he had enough information about the agent's social media use to evaluate potential bias.  Defendant argues the court must allow a defendant to explore "not only '*whether* [the witness] was biased' but also 'to make a

record from which to argue *why* [the witness] might have been biased." (ECF No. 41, at 19 (quoting *United States v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005).) Defendant argues the magistrate judge abused his discretion because, while he allowed questioning as to whether the agent was biased, he did not allow sufficient questioning to allow counsel to elicit facts showing why the agent's social media use indicated bias.

This characterization misconstrues the record. The magistrate judge allowed defense counsel to make a sufficient record from which to argue why Agent Brandt might have been biased. He allowed counsel to ask about the agent's membership in various Facebook groups, media coverage of those groups, the content of posts others made within those groups, and his views on those posts. (ECF No. 39, at 21–26.) The court allowed sufficient inquiry for counsel to explore and later argue any bias on the part of the witness. There was no abuse of discretion.

**E. Mens Rea**

Defendant argues § 1325(a)(1) contains a *mens rea* element of knowledge of alienage, and because the charging document did not contain this element, dismissal was warranted. The Court reviews the denial of a pre-trial indictment challenge *de novo*. *United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020)

"Defendant's . . . knowledge of alienage argument has been consistently rejected by other courts in this district." *United States v. Vazquez-Sanchez*, No. 319MJ23193FAGBTM, 2020 WL 2394969, at *3 (S.D. Cal. May 11, 2020). Indeed, those courts rejected the precise argument Defendant makes here—that the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), requires a finding that knowledge of alienage is an element of § 1325(a)(1). *Vazquez-Sanchez*, 2020 WL 2394969, at *3 (collecting cases).

*Rehaif* reiterates the "longstanding presumption" that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" 139 S. Ct. at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 74 (1994)). There, the Supreme Court held that in a

12

3:19-MJ-23711-BJS-DMS-1

prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), which criminalize possession of firearms by certain categories of individuals, the government was required to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2491.

Here, however, unlike the statutes at issue in *Rehaif*, "the element of alienage in a § 1325 charge does not criminalize 'otherwise innocent conduct.'" *United States v. Zeferino-De Jesus*, No. 319MJ23139AHGDMS, 2020 WL 94373, at *8 (S.D. Cal. Jan. 7, 2020). The court in *United States v. Ramos-Moran*, No. 19CR2984-LL, 2019 WL 4393670 (S.D. Cal. Sept. 13, 2019), agreed, finding *Rehaif* inapplicable in the illegal entry context on two grounds. First, in contrast to the statutes at issue in *Rehaif*, § 1325 does not contain an express use of "knowingly." *Id.* at *4. Second, pursuant to 19 U.S.C. § 1459, every "individual" must comply with designated border crossing requirements, and a defendant's noncitizen status is "therefore not the 'crucial element' separating wrongful from innocent conduct." *Id.* ("From the plain text, Defendant's conduct would have violated the law even if he was a U.S. citizen."); *see* 19 U.S.C. § 1459 (providing criminal penalties for any individual who intentionally fails to enter at a designated border crossing point, fails to report the arrival, and fails to present for inspection). "Therefore, the Government does not need to prove that a defendant knew he or she was an alien to obtain a conviction for violating 8 U.S.C. § 1325(a)(1)." *Zeferino-De Jesus*, 2020 WL 94373, at *8.

Defendant next argues the Government was required to prove knowledge of alienage because the offense was charged as an attempt crime. Defendant argues that if a person genuinely believes he is a United States citizen, he lacks the specific intent to commit an attempted illegal entry, relying on *United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978). This argument has been rejected by courts in this district. *See Vazquez-Sanchez*, 2020 WL 2394969, at *4. "*Quijada* cannot be plausibly read to hold that a defendant could avoid conviction under § 1325 if [he] had the specific intent to enter the country free from official restraint, merely because the defendant had a mistaken belief that [he] was not an alien at the time of the offense." *Zeferino-De Jesus*, 2020 WL 94373, at *8.

The Court agrees with this reasoning. Accordingly, Defendant's challenge to the complaint fails.

### F. Nondelegation Challenge to § 1325

Defendant argues § 1325(a)(1) is unconstitutional because it lacks an intelligible principle to guide the determination of what constitutes a "designated" place of entry and thus violates the nondelegation doctrine. "Courts in this District have resoundingly rejected the non-delegation arguments presently raised by Defendant in the context of § 1325(a)(1)." *Vazquez-Sanchez*, 2020 WL 2394969, at *3 (collecting cases). Section 1325's "delegation to immigration officers to designate time and place of lawful entry is . . . significantly constrained," as ports of entry can only be designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *United States v. Morales-Roblero*, No. 3:19-MJ-24442-AHG, 2020 WL 5517594, at *3 (S.D. Cal. Sept. 14, 2020) (citing *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835, 839–40 (S.D. Cal. 2019); *see* 8 CFR § 100.4(a). Consistent with these cases, the Court finds, as it has previously, that § 1325(a)(1) does not violate the nondelegation doctrine. *See United States v. Singh*, No. 19-CR-3623 BLM (DMS), 2020 WL 5500232, at *13 (S.D. Cal. Sept. 11, 2020).

### G. Equal Protection Challenge to "Streamline Court"

Defendant next argues that the prosecution of his case in "Streamline Court" violates the equal protection clause of the United States Constitution. He argues that by prosecuting § 1325 offenses through the Streamline process instead of through the Southern District's Central Violations Bureau ("CVB"), the government treats similarly situated defendants differently on the basis of alienage, in violation of equal protection.

The equal protection clause under the Fourteenth Amendment states in relevant part that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. Courts in this District have concluded § 1325 does not create a classification based on alienage that would invoke strict scrutiny. *See, e.g.*, *United States v. Jeronimo-Pablo*, No. 20mj20066-AHG, 2020 WL 4500628, at

*2 (S.D. Cal. Aug. 5, 2020); *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2-3 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ2276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *Chavez-Diaz*, 2018 WL 9543024, at *3.[2]

Accordingly, the Court applies rational basis review. *See United States v. Barajas-Guillen*, 632 F. 2d 749, 752 (9th Cir. 1980) ("[C]lassifications among aliens made pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees.") (internal quotation marks and citations omitted); *Plyler v. Doe*, 457 U.S. 202, 223 (1982) ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.' "). Applying a rational basis standard, the question is whether "the classification at issue bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216).

As other courts in this district have noted, Streamline Court serves the legitimate government interest of conserving judicial resources. *See United States v. Reyes-Pinzon*, No. 19-MJ-24308-RNB-H, 2020 WL 2542640, at *3 (S.D. Cal. May 19, 2020) (collecting cases). Indeed, "[m]isdemeanor § 1325 cases are handled together rather than on the CVB calendar because it makes 'organizational sense' given the volume of § 1325 cases and divergent jurisdictional underpinnings of CVB court." *Ramirez-Ortiz*, 370 F. Supp. 3d at 1154 (internal quotation marks and citations omitted). Furthermore, § 1325 cases cannot

---

[2] Although Defendant contends the Government's decision to bring § 1325 charges creates a distinction based on alienage, the distinction is based on each defendant's alleged criminal activity, not alienage. Rather than creating a separate court for processing alien defendants regardless of what criminal charges are brought against them, the Streamline process is only used for charges brought based on alleged unlawful entry in violation of § 1325. Accordingly, Defendant fails to demonstrate that "alienage, as a suspect class, is the basis for any distinct or different treatment" because all misdemeanor § 1325 cases are handled together and "[t]he scheduling of these matters in one courtroom or the other is charge based, not nationality based." *Chavez-Diaz*, 2018 WL 9543024, at *2–3.

be placed on the CVB calendar because they are not CVB matters.[3] The Court agrees with *Chavez-Diaz* and *Ramirez-Ortiz*, and finds there is a rational basis for the court to "separately calendar matters that fall into groups by charge and type of proceedings." *Chavez-Diaz*, 2018 WL 9543024, at *3. Defendant's challenge therefore fails.

Defendant further argues "Streamline Court" is unconstitutional because the Government's policy of prosecuting § 1325 defendants via Streamline, rather than in CVB court, violates equal protection under the doctrine of selective prosecution or selective enforcement. This argument fails for the reasons set forth in *Singh*, 2020 WL 5500232, at *16. The Court finds the Government's use of the Streamline process does not amount to selective prosecution or selective enforcement. *See, e.g.*, *United States v. Lazcano-Neria*, No. 3:20-MJ-04538-AHG, 2020 WL 6363685, at *4 (S.D. Cal. Oct. 29, 2020); *United States v. Campos-Atrisco*, No. 3:19-MJ-24683-KSC, 2020 WL 7181086, at *4 (S.D. Cal. Dec. 7, 2020). Accordingly, the Court rejects Defendant's equal protection challenges.

### H. Equal Protection Challenge to 1325(a)

Finally, Defendant argues the Court should vacate his conviction because § 1325(a) is facially unconstitutional under the equal protection clause in light of the Supreme Court's decision in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2018). The Court reviews *de novo* the constitutionality of a statute. *United States v. Dowai*, 839 F.3d 877, 879 (9th Cir. 2016); *United States v. Younger*, 398 F. 3d 1179, 1192 (9th Cir. 2005).

In *Morales-Santana*, the Supreme Court held that the gender-based distinctions for derivative citizenship set forth in 8 U.S.C. §§ 1401(a)(7) and 1409(a) and (c) are unconstitutional in violation of the Equal Protection Clause. 137 S. Ct. at 1700–01. Rios-

---

[3] The CVB docket handles all matters charged by citation, information, indictment, or complaint pursuant to the Assimilative Crimes Act, 19 U.S.C. § 13. *See United States v. Sproed*, 628 F. Supp. 1234 (D. Or. 1984). These matters include "improper parking, illegal camping, speeding, civil disturbances, fish and wildlife infractions, driving while intoxicated and other offenses." *Chavez-Diaz*, 2018 WL 9543024, at *2 (citation omitted). Accordingly, the court in *Chavez-Diaz* concluded "[i]mmigration violations, like 8 U.S.C. § 1325(a), are not subject to disposition as a CVB matter." *Id.* at *4.

Diaz argues because 8 U.S.C. § 1325 incorporates §§ 1401 and 1409's definitions of "alien" and "citizen," it is also unconstitutional.

However, several courts in this district, including this Court, have already addressed and rejected the argument that the holding in *Morales-Santana* renders § 1325(a) facially invalid. In *United States v. Ibarra-Hernandez*, No. 20-mj-20300-RNB-H, 2020 WL 3078514 (S.D. Cal. Jun. 9, 2020), the court found the defendant was unable to meet her burden to demonstrate that "no set of circumstances exists under which the statute would be valid," as is required in a facial challenge to the constitutionality of a law, because "[t]he severability clause in the Immigration and Nationality Act ('INA') dictates that the remainder of 8 U.S.C. §§ 1401 and 1409 were not affected by *Morales-Santana*." 2020 WL 3078514, at *5 (quoting *United States v. Duffy*, 752 F. App'x 532, 533 (9th Cir. 2019) (unpublished) (citing 8 U.S.C. § 1101 note ("If any provision of this title . . . is held invalid, the remainder of the title . . . shall not be affected thereby."))). In other words, because of the INA's severability clause, *Morales-Santana*'s holding did not affect the definitions of "alien" and "citizen" incorporated in § 1325(a). *Id.*

Similarly, the Ninth Circuit has rejected the argument that *Morales-Santana* invalidates 8 U.S.C. § 1326, the illegal reentry statute, citing the INA's severability clause. *See United States v. Mayea-Pulido*, 946 F. 3d 1055, 1066 n.10 (9th Cir. 2020). Accordingly, the Court agrees with *Ibarra-Hernandez*, and finds Rios-Diaz has failed to establish that § 1325 is facially unconstitutional. *See Ibarra-Hernandez*, 2020 WL 3078514, at *5; *United States v. Benito-Mendoza*, No. 19-MJ-23597-RNB-CAB, 2020 WL 206183, at *2 (S.D. Cal. Jan. 13, 2020).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## III.
## CONCLUSION AND ORDER

For these reasons, the Court affirms Defendant's judgment of conviction.

**IT IS SO ORDERED.**

Dated: March 16, 2021

Hon. Dana M. Sabraw
United States Chief District Judge